UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STACEY ARTHUR WYLER,

    Plaintiff,

v.                                                            Case No. 1:11-CV-132

BANK OF AMERICA,                                HON. GORDON J. QUIST

    Defendant.
_____/

## OPINION

Bank of America, N.A., ("BOA") filed a Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. #12.) In lieu of a response to that motion, Plaintiff filed a Second Amended Complaint ("SAC"). Thereafter, BOA filed a Motion to Strike the Second Amended Complaint and To Grant Its Pending Motion to Dismiss Plaintiff's First Amended Complaint. (Dkt. #15.)

The Court takes notice that BOA withdrew portions of its argument made in support of its motion to dismiss Plaintiff's First Amended Complaint. (Dkt. #17.) The Court will not consider those portions in ruling on the aforementioned motions.

For the reasons set forth below, the Court will grant BOA's motion and dismiss Plaintiff's FAC with prejudice. Furthermore, the Court will strike Plaintiff's SAC for failure to comply with Fed. R. Civ. P. 15(a)(2).

**Facts**[1]

In 2005, Stacey Wyler ("Plaintiff") purchased a single family primary residence for $399,900

---

[1] The following facts are taken from the allegations in the FAC.

and financed it with a loan by Northwestern Bank. (FAC at 2, ¶ 6.) Later in 2005, Plaintiff refinanced his home with Huntington Bank, which subsequently sold the mortgage to Countrywide Home Loans ("Countrywide"). During the time that Countrywide serviced Plaintiff's mortgage, Plaintiff's identity was stolen, which resulted in a collection and a lawsuit. (*Id.*) The identity theft eliminated Plaintiff's ability to obtain any type of new financing. (*Id.*)

To add to Plaintiff's problems, in 2008, Plaintiff and his wife lost their jobs and subsequently missed several mortgage payments. (FAC at 2, ¶ 7.)

In January, 2009, Plaintiff's wife became a loan officer with Fifth Third Bank. (*Id.*) She immediately applied for and supplied all required documentation for a loan modification with Countrywide. (*Id.*) Jessica Jasso, a Countrywide representative, told Plaintiff that the foreclosure process on their home would not be initiated. (*Id.*) However, the home was advertised for sale and scheduled for a sheriff's sale in mid-March. (*Id.*)

Ms. Jasso then completed the loan modification, and told Plaintiff that the modification had a "three month trial period." (*Id.*) Ms. Jasso told him that the modification would become permanent if Plaintiff made each payment on time during the trial period. (*Id.*) Plaintiff made all of the payments on time, but he did not receive a permanent modification. (*Id.*)

Sometime thereafter, BOA began servicing the loan. (FAC at 3, ¶ 8.) In April 2010, Plaintiff again applied for a loan modification under the Home Affordable Mortgage Program ("HAMP"). (*Id.*) Plaintiff's wife submitted all documentation for Plaintiff's modification in accordance with HAMP's guidelines. (*Id.*) Plaintiff's wife confirmed, via telephone, that BOA received all of the required documents. (*Id.*)

In June 2010, BOA told Plaintiff's wife to submit a new HAMP application because it could not find the first application, despite Plaintiff having received a FedEx confirmation of receipt.

2

(FAC at 3, ¶ 9.) Once again, Plaintiff submitted all required documents per HAMP's guidelines. (*Id.*)

In the Fall of 2010, Plaintiff and/or his wife sent several letters to BOA requesting the status of their modification. (FAC at 4, ¶ 10.) BOA did not respond to any of the letters. (*Id.*) According to Plaintiff, many of the letters "were considered Qualified Written Request[s] under [the Real Estate Settlement Procedures Act ("RESPA")] and were totally ignored" by BOA. (*Id.*)

Eventually, three representatives from BOA's "President's Office" confirmed that three of Plaintiff's modification applications sent to BOA were complete and in review. (FAC at 4, ¶ 11.) Phil Meharra told Plaintiff, "I do see that you have submitted three separate modification applications with all supporting documentation and you do deserve a modification and I will see that this is expedited on your behalf." (*Id.*) Mr. Meharra apologized and said that he would complete the loan modification as soon as possible. (*Id.*) Shaun Walker, another representative from BOA's President's Office, also confirmed that all of Plaintiff's required documents for a modification had been filed. (*Id.*) Mr. Walker also stated that the $300 increase in Plaintiff's mortgage payment was due to an increase in Plaintiff's homeowner's insurance. (*Id.*) Plaintiff alleges that this was a lie meant to intentionally deceive Plaintiff. (*Id.*) Ultimately, Plaintiff did not receive a loan modification under HAMP.

In August 2010, Plaintiff's mortgage payment increased by over $300 per month, and was scheduled to increase by another $300 in August 2011. (FAC at 3, ¶ 7.)

## Motion Standard

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41,

3

45-46, 78 S. Ct. 99, 102 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In analyzing a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008).

### First Amended Complaint

Plaintiff's FAC alleges (1) negligence, (2) promissory estoppel, (3) violations of RESPA, and (4) and violations of HAMP.

#### Claim 1: Negligence

Plaintiff alleges that "Countrywide" failed to take the appropriate steps to protect his personal information from identity theft. (FAC at 8, ¶ 13.) But for Countrywide's mistakes, Plaintiff could have taken steps to protect his identity. (*Id.*) "This negligence on the part of

Countrywide damaged plaintiff's credit and eliminated any chance of financing anything . . . ." (*Id.*)

The elements of a negligence claim are "duty, breach of that duty, causation, and damages." *Brown v. Brown*, 478 Mich. 545, 552, 739 N.W.2d 313, 316-17 (2007). Duty is "the legal obligation to conform to a specific standard of conduct in order to protect others from unreasonable risks of injury." *Lelito v. Monroe,* 273 Mich. App. 416, 419, 729 N.W.2d 564, 566 (2006).

Here, Plaintiff's negligence claim relies entirely upon mistakes purportedly committed by *Countrywide*. The claim does not make a single allegation of negligence against BOA, nor does Plaintiff allege that BOA is derivatively liable, as Countrywide's successor, for the alleged negligence of Countrywide. In fact, Plaintiff does not even mention BOA in his negligence claim.

Therefore, Plaintiff has failed to state a claim for negligence against BOA.

**Claim 2: RESPA Violations**

Plaintiff's FAC alleges that "numerous violations of RESPA occurred throughout his two year process of trying to secure a permanent modification through Bank of America." Under 12 U.S.C. § 2605(e), loan servicers must respond to borrower inquiries within specific time limits. The obligation to respond is triggered only after a borrower sends the servicer a "Qualified Written Request."

Under § 2605, in the case of an "individual" borrower, such as Plaintiff here, "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure" in an amount equal to "any actual damages to the borrower as a result of the failure[.]" 12 U.S.C. § 2605(f)(1)(A). Actual damages is an element of any claim under RESPA § 2605. *Langley v. Chase Home Fin.*, *LLC,* No. 1:10-cv-604, 2011 WL 1150772, at *10 (W.D. Mich. Mar. 11, 2011) (citing *Eronini v. JP Morgan Chase Bank NA*, 368 Fed. App'x 841, 842 (9th Cir. 2010) (holding that the district court properly dismissed the plaintiff's complaint for failure to state a claim for a violation of RESPA because plaintiff suffered no damages as required under § 2605(f), which allows

5

the recovery of "actual damages") and *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 795 (E.D. Mich. 2010) ("Even if the Court were able to conclude that Plaintiff has adequately alleged that Defendant's responses were somehow inadequate, Plaintiff's RESPA claim fails for the additional reason that Plaintiff has alleged no actual damages attributable to Defendant's alleged failure to respond.").)

Even assuming Plaintiff sent Qualified Written Requests to BOA, and also assuming BOA's responses were somehow inadequate, Plaintiff's RESPA claim still fails because he has not alleged any actual damages as a result of such violations. Just like *Mekani*, Plaintiff here has not mentioned the concept of damages in his RESPA claim. Since Plaintiff has failed to allege any causal link between BOA's allegedly inadequate response to his Qualified Written Requests and any actual damages suffered, his FAC fails to plead a viable RESPA claim.

### Claim 3: Promissory Estoppel[2]

Plaintiff makes clear that his promissory estoppel claim is based on *oral* assurances. (FAC at 10, ¶ 17.) Plaintiff summed up the alleged assurances made to him as follows: "In relying on these 'oral' assurance[s] Plaintiff did not abandon the home or seek to buy a new one, but instead relied upon these verbal assurances to his detriment." (*Id.* at 11 (emphasis added).) Plaintiff's promissory estoppel claim fails under the Michigan Statute of Frauds. In particular, with regard to financial institutions, the statute provides:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

---

[2] In Plaintiff's complaint, his promissory estoppel claim is the third listed, even though he labeled it his "second cause of action," which he also labeled his RESPA claim.

6

>(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
>(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

M.C.L.A. § 566.132(2).

In applying § 566.132(2), courts have found that "Michigan law does not recognize claims to enforce oral promises against financial institutions. *Wier v. Countrywide Bank N.A.*, No. 10-cv-11468, 2011 WL 1256944, at *5 (E.D. Mich. Mar. 31, 2011); *see also, Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 619 N.W.2d 66 (2000) (barring the plaintiff's promissory estoppel and negligence claims pursuant to § 566.132(2)); *Moore v. Fifth Third Bank*, No. 1:10-cv-641, 2011 WL 1211932 (W.D. Mich. Mar. 30, 2011) (plaintiff could not bring claims or seek damages based on an alleged oral promise by Fifth Third to loan money). The statute "plainly states that a party is precluded from bringing a claim – no matter its label – against a financial institution to enforce the terms of an oral promise . . . ." *See, e.g.*, *Moore*, at *3 (citing *Crown Tech. Park*, supra).

Therefore, such oral misrepresentations that Plaintiff alleges, taken as true, cannot serve as a basis for Plaintiff's promissory estoppel claim in his FAC.

### **Claim 4: Violations of HAMP**

Plaintiff's Fourth Claim alleges violations of HAMP. Plaintiff notes that the Dodd-Frank Act prescribes the format, content, and timing of notices that must be provided to borrowers requesting consideration of a modification under HAMP. In general, Plaintiff alleges that BOA did not meet the specific requirements that are designed to assist borrowers in understanding HAMP. Plaintiff says that BOA provided "absolutely no response to his inquiries." (FAC at 12.) BOA "did not acknowledge the inquiry by writing via e-mail, fax or mail but instead ignored it." (*Id.*) Furthermore, BOA "simply sent a letter stating that the loan modification was denied due to

"missing documents," but never once communicated with Plaintiff as to what was "missing" after numerous inquiries by Plaintiff." (*Id.*)

Problematically for Plaintiff, HAMP does not provide plaintiffs with a private right of action. *See e.g.*, *LaSalle Bank Nat'l. Ass'n v. Ray*, No. 09-13526, 2011 WL 576661, at *5 (E.D. Mich. Feb. 9, 2011); *Hart v. Countrywide Home Loans*, 735 F. Supp. 2d 741, 2010 WL 327623, at *5 (E.D. Mich. Aug. 19, 2010); *Aleem v. Bank of America,* 2010 WL 532330, at *4 (C.D. Cal. Feb. 9, 2010) ("There is no express or implied right to sue fund recipients ... under TARP or HAMP.)*; Zendejas v. GMAC Wholesale Mortg. Corp.,* 2010 WL 2490975, at *3 (E.D. Cal. June 16, 2010) (concluding that third-party beneficiaries cannot enforce government contracts "absent a clear intent to the contrary," and that HAMP expresses no such intent).

Therefore, Plaintiff's Fourth Claim alleging violations of HAMP does not state a claim upon which relief can be granted.

**Plaintiff's Second Amended Complaint**

Plaintiff filed his original complaint on February 27, 2011. (Dkt. #1.) On June 24, 2011, pursuant to Fed. R. Civ. P. 12(b)(6), BOA filed a motion to dismiss Plaintiff's complaint. (Dkt. #8.) In response, on July 14, 2011, as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff amended his pleading and filed his FAC. (Dkt. #11.) On July 28, 2011, pursuant to Fed. R. Civ. P. 12(b)(6), BOA filed a motion to dismiss Plaintiff's FAC. (Dkt. #12.) Subsequently, without BOA's consent or this Court's leave, in lieu of a response to BOA's motion, Plaintiff filed a SAC. (Dkt. #14.) Accordingly, BOA filed a Motion to Strike Plaintiff's SAC and also asked this court to grant its current pending motion to dismiss Plaintiff's FAC. (Dkt. #15.)

A party may amend its pleading once as a matter of course, but "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.

8

R. Civ. P. 15(a)(2) (emphasis added). The court should freely give leave when justice so requires. *Id.* However, "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Plaintiff's SAC will be stricken for failure to comply with Fed. R. Civ. P. 15(a)(2). Plaintiff already amended his complaint as permitted by Fed. R. Civ. P. 15(a)(1), and has now failed to obtain BOA's consent or leave from this Court as required by Fed. R. Civ. P. 15(a)(2).

Furthermore, even if Plaintiff moved to amend his complaint to file the current SAC, this Court would deny that motion because such an amendment would be futile. The two claims in the SAC, Promissory Estoppel and Negligence, would fail for reasons similar to those causing those claims to be dismissed in the FAC.

With respect to the Negligence Claim, Plaintiff amended his complaint to say that "Countrywide/[BOA] failed to secure Plaintiff's personal information." (Dkt. #14 at 3, ¶ 10 (emphasis added).) Plaintiff said that he was unaware of the class action lawsuit against Countrywide that arose out of a Countrywide employee stealing tens of thousands of mortgage customer's personal information. (*Id*.) "Countrywide did not contact Plaintiff in a timely manner" about this incident or the class action lawsuit and "as a direct result[] Plaintiff had a fraudulent account opened in his name . . . ." (*Id.* (emphasis added).) Plaintiff's remaining Negligence Claim explains the damages that Plaintiff suffered from this alleged "negligence." (*Id.* at 3-4, ¶¶ 11, 12.)

The elements of a negligence claim are "duty, breach of that duty, causation, and damages." *Brown,* 478 Mich. At 552, 739 N.W.2d at 316-17. Duty is "the legal obligation to conform to a specific standard of conduct in order to protect others from unreasonable risks of injury." *Lelito*, 273 Mich. App. At 419, 729 N.W.2d at 566. Here, Plaintiff's Negligence Claim is dismissed

because he fails to allege why or how BOA had a duty "to secure Plaintiff's personal information." As Plaintiff states, it was a Countrywide employee who allegedly stole personal information from Countrywide's customers. Plaintiff fails to allege that BOA had a duty, directly or derivatively, to manage *Countrywide's* employees, or to safeguard *Countrywide's* customers' information.

With respect to the Promissory Estoppel Claim, the SAC only alleges *oral* assurances made by BOA. Plaintiff alleges that "Phil Meharra from BOA called" Plaintiff to assure them that a modification would be completed. (Dkt. #14 at 6, ¶ 17.) As explained above, Michigan law does not provide relief for oral promises made by financial institutions. *See* M.C.L. § 566.132(2). Additionally, Plaintiff alleges that Ms. Jasso made him a promise that Countrywide did not fulfill. Plaintiff's SAC does not allege whether this promise was oral or in writing.[3] Regardless, this promise is not enforceable against BOA because Plaintiff informs us that Ms. Jasso works for Countrywide, and he does not argue that BOA should be liable for the promises made by Countrywide.

## CONCLUSION

For the reasons set forth above, the Court will grant BOA's Motion to Dismiss First Amended Complaint. (Dkt. #12.) The Court will also grant BOA's Motion to Strike Second Amended Complaint. (Dkt. #15.)

A separate Order will issue.


Dated: November 7, 2011                    /s/ Gordon J. Quist
                                           GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE

---

[3] In the FAC, Plaintiff alleged that the promise made by Ms. Jasso was oral.